IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                                  ) | Criminal No. 3:20CR00025 |
| ) | |
| DOMINIQUE DEJONE THURSTON     ) | |

### UNITED STATES' SENTENCING MEMORANDUM

In the summer of 2020, Dominique Dejone Thurston ("Thurston") terrorized store clerks working at local convenience stores by robbing them at gun point, and, in some cases, physically assaulting them by striking them with the firearm. Between June 18, 2020 and September 17, 2020, all gas station and convenience store employees in Central Virginia were potential victims of Thurston's violence and rage. During the same time period, law enforcement worked tirelessly, and often times around the clock, to identify the perpetrator of the robberies and try to anticipate where he might strike next. In all, Thurston committed eight Hobbs Act robberies, seven in the Western District of Virginia, and one in the Eastern District of Virginia (Stafford County).

As detailed in the Presentence Investigation Report ("PSR"), under the United States Sentencing Guidelines ("the Guidelines"), the defendant's advisory Guideline sentencing range as to Counts 1, 3, 5, 7, 9, 11, and 13, is 121 months to 151 months. In addition, Counts 2 and 4 carry a mandatory minimum term of 7 years imprisonment, which must run consecutive to each other and any sentence imposed on the other counts. PSR, ¶¶ 126-129.  The defendant pled guilty pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which set his sentencing range at 324 to 360 months of incarceration. Plea Agreement, ECF No. 38.  The United States

1

respectfully submits that, based on all of the facts, a sentence at the high-end of the Rule 11(c)(1)(C) sentencing range is appropriate. As set forth more fully below, such a sentence would be reasonable and satisfy the § 3553(a) factors, including reflecting the seriousness of the offenses.

## FACTUAL BACKGROUND

On September 20, 2018, Thurston was released to state supervision having been sentenced three years earlier on charges of abduction with intent to defile, rape, and forcible sodomy. PSR, ¶ 101. He had been placed on supervised probation for a period of three years to be followed by 50 years of good behavior. Twenty-one months later, he would commit his first armed robbery. PSR, ¶ 18.

The robberies committed by Thurston had two significant similarities: his targets were always gas stations or convenience stores, and he was always armed.

On June 18, 2020, Thurston entered the Oak Hill Market in Albemarle County, grabbed a couple of items and approached the clerk, purportedly to pay for them. PSR, ¶ 18. Once the clerk opened the cash register, Thurston drew a handgun from his hoodie, pointed the firearm at the clerk and demanded "all the money." *Id*. Thurston took the cash drawer that had been handed to him, emptied it into his back pack, and fled. *Id*.

Nine days later, Thurston robbed the 7-Eleven convenience store on Ivy Road in the City of Charlottesville. As with his previous robbery, Thurston entered the store and brought some items to the clerk to purchase. PSR, ¶ 19. Once the clerk opened the register, Thurston pulled out a firearm, pointed it at the clerk and threated to shoot her if she did not give him the money therein. *Id.* With the proceeds from the register in his possession, Thurston fled. *Id*.

On July 30, 2020, Thurston would strike for a third time. This time, his victim was the BP Gas Station on Monticello Road in the City of Charlottesville. PSR, ¶ 20. As was his pattern, Thurston entered the store, placed an item for purchase on the counter, and when the clerk opened the register, Thurston pulled out what appeared to be a black, semi-automatic handgun. *Id*. Thurston pointed his gun at the clerk and demanded that the clerk "give him all your money." *Id*. Once he had the money, Thurston fled. *Id*. Up to this point, despite his threats of violence, Thurston never physically assaulted his victims, however, this was about to change.

Two weeks later, Thurston entered the 7-Eleven convenience store on Greenbrier Drive in Albemarle County and asked the clerk for some Jazz Black and Mild cigars. PSR, ¶¶ 22-23. The clerk had to turn his back on Thurston to get the cigars, and when he turned back around, Thurston was pointing a firearm at him and demanding that the clerk give him "all the mother fucking money." *Id*. Thurston then came around the counter stating, "mother fucker I'll kill your ass," and pistol-whipped the clerk in the head with the butt of the gun before taking cash from the register and fleeing. *Id*.

Thurston waited two more weeks before robbing the Kangaroo Gas Station on Rio Road in Albemarle County. PSR, ¶ 24. On August 31 2020, Thurston entered the gas station, picked up some items for purchase and approached the clerk working the register. *Id*. Once the clerk opened the register, Thurston removed a firearm from his pocket, pointed it at the clerk, and came around the counter. *Id*. Once behind the counter, Thurston began emptying the contents of the register into a plastic bag. *Id*. Thurston threatened to kill the clerk when the clerk had trouble opening the safe to get additional money that Thurston had demanded. *Id*. Thurston then struck the clerk in the head with the gun causing two small lacerations. *Id*.

On September 4, 2020, five days later, Thurston robbed the Seven Day Junior Store located on Monticello Road in the City of Charlottesville. PSR, ¶¶ 26-27. Thurston entered the store, placed items on the counter presumably for purchase, and when the clerk opened the register, Thurston pulled a gun and came around the counter. *Id*. Despite the clerk complying with his demands, Thurston "racked" his gun and struck the clerk in the head with the firearm. *Id*.

Mid-September found Thurston in Stafford County, Virginia. PSR, ¶ 28. On September 13, 2020, Thurston entered a 7-Eleven convenience store in Stafford and robbed the clerk working that evening. *Id*. Thurston placed items for purchase on the counter, and when the clerk opened the register, Thurston produced a handgun, pointed it at the clerk, and told him to "put it all in the bag." *Id*. This robbery is not a charged count, but the parties have agreed that this robbery represents relative conduct for purposes of the sentencing guidelines. Plea Agreement, ECF No. 38. Additionally, Exhibit A of the Plea Agreement reflects that in consideration of Thurston's plea to the charges set forth in the Plea Agreement, the Commonwealth Attorney for the City of Stafford, Virginia has agreed not to institute any state criminal charges relating to Thurston's commission of this robbery provided Thurston complies with the Plea Agreement in the instant matter. *Id.,* PSR, ¶ 16.

By the time of this last robbery, law enforcement had identified Thurston as a suspect and began to focus their attention on his apprehension. To this end, law enforcement was in the vicinity of the 7-Eleven convenience store on Boulderview Road in Albemarle County when Thurston committed his last robbery. PSR, ¶¶ 29-31. On September 17, 2020, law enforcement was tracking Thurston via GPS. *Id*. at 29. Although the tracking was in "real time," there was a delay in the information being communicated from the service provider to law enforcement. As with his other

4

robberies, Thurston entered the establishment, picked up some items and took them to the counter for purchase. *Id*. at 31. Once at the register, Thurston handed the clerk some cash, and when the clerk opened the register, Thurston pulled a handgun from his pocket and pointed it at the clerk. *Id*. Thurston then proceeded around the counter and gratuitously struck the clerk in the head with his handgun before removing the cash from the register and fleeing. *Id*. Thurston would be stopped several minutes later by law enforcement. Located in his vehicle at the time of his apprehension was a firearm, ammunition, proceeds from several of the robberies, and clothes worn during his crime spree.

## DISCUSSION

District courts generally must perform the following four steps in sentencing defendants: (1) "properly calculate the sentence range recommended by" the advisory Guidelines; (2) "determine whether a sentence within that range and within statutory limits serves the factors set forth in [18 U.S.C.] § 3553(a) and, if [it does] not, select a sentence that does serve those factors;" (3) implement any applicable mandatory statutory limitations; and (4) articulate, on the record, "the reasons for selecting the particular sentence," and especially, if applicable, "explain[] why a sentence outside of the Sentencing Guidelines range better serves the relevant sentencing purposes set forth in § 3553(a)" than one within it. *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006); 18 U.S.C. § 3553(a). This memorandum outlines these factors and the bases for the United States' recommended sentence.

**Section 3553(a) Sentencing Factors**

**A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Without dispute, the nature and circumstances of the events comprising this case represent some of the worst conduct prohibited by federal criminal laws. Thurston committed eight Hobbs Act robberies while armed. As described above, in some of the cases, he needlessly and without provocation, pistol-whipped his victims. This violence occurred despite the victim's full compliance with Thurston's demands and their putting up no resistance whatsoever.

The facts of this case and history of the defendant also reveal important information that the Court should consider in determining his sentence:

1. **Thurston has a violent history:** At age 15, Thurston was charged with abduction with the intent to defile, rape, and forcible sodomy. PSR, ¶ 101. The facts of this sexual assault are alarming. In July 2013, Thurston saw the victim leave her home, and as she did, he ran in her direction and hid behind a vehicle. *Id*. As she got closer, Thurston threw her to the ground by her neck, took her money, and then dragged her behind a house. *Id*. For the next forty minutes, Thurston, forced the victim to perform oral sex on him and vaginally raped her. *Id*. During the incident, Thurston threatened to kill the victim if she made any noise. *Id*. He would later tell law enforcement that had the victim fought back, he would have killed her. *Id*.

On June 16, 2015, Thurston was sentenced to 40 years imprisonment, with 37 years suspended, on each of the abduction and forcible sodomy charges. *Id*. On the rape charge, Thurston was sentenced to 60 years imprisonment, which was then suspended on the condition that he be committed to the Virginia Department of Juvenile Justice as a serious offender until his 21st

6

birthday, unless released earlier by the Court. *Id*. He was also placed on supervised probation for a period of three years upon his release from imprisonment and ordered to be of good behavior for 50 years. *Id*.

On January 26, 2018, the state Court, after an evidentiary hearing, suspended the balance of the imprisonment on the rape charge effective on Thurston's 21st birthday. *Id*. Additionally, the sentences on the abduction and forcible sodomy convictions were suspended. *Id*.

2.   **Thurston was on Supervised Probation**: As outlined above, at the time Thurston committed the instant robberies, he was on supervised probation in the state for violent sex offenses. Clearly, his prosecution on rape and abduction charges, his time spent incarcerated, and the restrictions and obligations associated with supervised probation were insufficient to deter him from engaging in additional violent conduct.

3.   **Thurston's Gratuitous Use of Violence Demonstrates Dangerousness:** It is significant that in four of the robberies, Thurston escalated his violent conduct from pointing a firearm at a clerk to striking clerks with the butt of his gun. In each case of physical violence, this occurred for absolutely no discernable reason. These victims were not resisting in any sense whatsoever. Additionally, they fully complied with his demands to turn over the contents of their registers. Despite their compliance, the clerks were not only subjected to the trauma of the robbery itself, but also were physically assaulted by Thurston. Thurston is an extremely dangerous criminal based on both his escalating physical assaults as well as his threats to kill if his demands are not met. There can be no other conclusion, especially when looking at the frequency and progressively brazen robberies and the ever-growing level of violence displayed in each.

The nature and circumstances of this case, and Thurston's demonstrated criminal history,

merit a sentence at the high-end of the Rule 11(c)(1)(C) range.

**B. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, Provide Just Punishment, and Provide Adequate Deterrence**

This Section 3553(a) factor also weighs in favor of a sentence at the high-end of the Rule 11(c)(1)(C) range. Armed robbery represents one of the most dangerous behaviors in which a defendant can engage. The Court must protect the public with a significant sentence in order to send a message to others contemplating similar conduct that such behavior is not tolerated in this district.

**C. The Need for the Sentence to Protect the Public From Further Crimes of the Defendant**

Dominique Thurston has a demonstrated history of violence beginning at the age of 15 when he abducted, sodomized, and raped a young lady and later admitted that, had she resisted him, he would have killed her.

At the age of 22, and while on supervised probation, he committed eight armed robberies within a three-month time span. In every single case, he pointed a gun at the victim during the robbery. In several of the later robberies, he struck his victim in the head with his firearm, and even threatened to kill his victim if they did not comply.

Thurston has made it clear that the only way to protect society from the violence that he seems to commit so regularly and casually is to incarcerate him. This factor weighs strongly in favor of a sentence at the high-end of the Rule 11(c)(1)(C) range.

**D. The Need for the Sentence to Provide the Defendant With Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment In the Most Effective Manner**

Thurston earned his high school diploma in 2017, while serving time at the Bon Air

Juvenile Detention Center. PSR, ¶ 122. By the time he left the Virginia Department of Juvenile Justice, he was six classes short of obtaining his associate degree. *Id.*

Thurston's work record is one of short-term periods of employment. PSR, ¶ 123. At the time of his arrest on the instant charges, Thurston had been working at a recycling center. *Id*. prior to that he had worked for two months at a car wash, one year for a plumbing company, and a few months at a local restaurant. *Id.*

Thurston's substance abuse history involves the daily use of marijuana, dating back to age 12. PSR, ¶ 120. He participated in substance abuse counseling and anger management treatment while at Bon Air Juvenile Correctional Center. *Id*. He has indicated he is amenable to participating in substance abuse treatment. *Id.*

The United States agrees that the Court should order the appropriate treatments and trainings for the defendant while in prison and later while on supervised release, but believes this need does not call for a shorter sentence balanced against the weight of the other Section 3553(a) factors.

**E. Applicable Sentencing Range and Kinds of Sentences Available**

The PSR details the Guideline calculation. PSR, ¶¶ 37-104. According to the PSR, the Total Offense Level is 30. PSR, ¶ 98. With a criminal history category of III, this results in an advisory sentencing guideline range of 120 months to 151 months on Counts 1, 3, 5, 7, 9, 11, and 13. *Id*. at 129. Counts 2 and 4 carry a mandatory term of imprisonment of seven years (or 168 months) each , which must be imposed consecutive to any other counts. *Id.* No objections to these calculations were filed by either the United States or the defendant. *Id.* at pg. 31. The Court has accepted the Rule 11(c)(1)(C) Plea Agreement entered into by the parties. Pursuant to the Plea

Agreement, the Rule 11(c)(1)(C) term of imprisonment range is 324 months to 360 months. Plea Agreement, ECF No. 38.

**F. Restitution**

The defendant is required to pay full restitution. 18 U.S.C. § 3663A. The total restitution amount is $2,630.54 and should be directed to the individuals and at the addresses as set forth in ¶ 143 of the PSR.

**G. Sentencing Exhibits and Testimony**

The United States intends to show a very short video clip of each of the robberies committed by Thurston. Each video clip is two minutes or less in length. Additionally, the United States will ask the Court to consider all victims' impact statements which will have been filed by the time of sentencing.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant to a total term of imprisonment of 396 months, to be followed by 5 years of supervised release, restitution in the amount of $2,630.54, and a special assessment of $100. The United States recommends that the term of imprisonment be apportioned as follows: 192 months on Counts 1, 3, 5, 7, 9, 11 and 13; 84 months on Count 2; 84 months on Count 4, with the sentences on Count 2 and 4 to run consecutive to each other as well as consecutive to the sentence imposed on Counts 1, 3, 5, 7, 9, 11 and 13.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

s/*Ronald M. Huber*
Ronald M. Huber
Assistant United States Attorney
255 West Main Street, Room 130
Charlottesville, VA 22902
Tel: 434.293.4283
Ron.Huber@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk by CM/ECF system which will send notification of such filing to counsel for the defendant, on this 24 day of February 2022.

s/*Ronald M. Huber*
Ronald M. Huber
