Case 3:20-cr-00025-NKM-JCH    Document 64    Filed 05/30/25    Page 1 of 9
Pageid#: 242

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:20-cr-00025 |
| v. | **MEMORANDUM OPINION** |
| DOMINIQUE DEJONE THURSTON, | JUDGE NORMAN K. MOON |
| *Defendant*. | |

Defendant Dominique Dejone Thurston requests a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 of the United States Sentencing Guidelines. Dkt. 57. Although he is eligible for a reduction under Amendment 821, the sentencing factors of 18 U.S.C. § 3553(a) weigh heavily against such a modification. Accordingly, the Defendant's request is denied.

**I. BACKGROUND**

Between June 18 and September 17, 2020, the Defendant committed eight Hobbs Act robberies, including seven in the Western District of Virginia.[1] The Defendant targeted gas stations and convenience stores in the City of Charlottesville, Albemarle County, and Stafford County.[2] During each robbery, he threatened the store clerk with a firearm. He also physically assaulted four of the clerks by striking them in the head with a firearm. At least three of the

---

[1] Unless otherwise noted, the factual background is derived from the Statement of Facts submitted to the Court in conjunction with the plea agreement. Dkt. 37.

[2] The Stafford County robbery was not charged in this case. However, the Defendant agreed that it represented relevant conduct for Sentencing Guideline calculations and a description of the robbery appears in the signed Statement of Facts. Dkt. 37.

victims required medical treatment.

On November 18, 2020, a federal grand jury issued a 15-count indictment, charging the Defendant with (1) seven counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); (2) seven counts of using a firearm in commission of a Hobbs Act robbery in violation of 18 U.S.C. § 924(c); and (3) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Dkt. 1. The Defendant later pleaded guilty to seven counts of Hobbs Act robbery and two counts of brandishing and possessing a firearm during the commission of a crime of violence. Dkt. 38. The Court accepted the Defendant's Rule 11(c)(1)(C) plea agreement. Dkts. 36, 38. The parties agreed that the Defendant would be sentenced to between 324 and 396 months' incarceration – above the applicable guidelines range (noted below) – and that the Government would move to dismiss the other firearms-related charges. Dkt. 38 at 3. Additionally, the Stafford County Commonwealth Attorney's Office agreed not to initiate state charges for the robbery that occurred within its jurisdiction. *Id*. at 11-12, Ex. A.

At sentencing, the relevant guidelines calculations yielded a total offense level of 30 and a criminal history category of III, corresponding with a guidelines imprisonment range of 121 to 151 months' incarceration, plus consecutive mandatory sentences of 84 months for each count of brandishing and possessing a firearm during and in relation to a crime of violence. Dkt. 44 ("PSR") at ¶ 126-29. However, pursuant to the Rule 11(c)(1)(C) plea agreement, the Court sentenced the Defendant to a total of 360 months. Dkt. 48. This included 192 months on the Hobbs Act robbery counts and 84-month consecutive sentences for each of the two § 924(c) counts. *Id*.

The Defendant is currently scheduled to be released on April 12, 2046. FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed May 30, 2025). /

Pursuant to Amendment 821 to the United States Sentencing Guidelines and 18 U.S.C. § 3582(c)(2), the Defendant requests that the Court reduce his sentence from 360 months to 339 months. Dkt. 57. He contends that this is comparable to his original sentence, which was about 1.25 times the high end of the guideline range. Dkts. 57 at 5; 62 at 3. He also asks the Court to consider his youth as a mitigating factor. More specifically, he emphasizes that his criminal history stems from offenses he committed at 15 years old and that he was 22 at the time of his robberies in the instant case. Dkt. 62 at 4-6.

## II. LEGAL STANDARDS

### A. Amendment 821

Amendment 821 made two major changes to the United States Sentencing Guidelines. In Part A, the Sentencing Commission limited the impact of "status points"—criminal history points assigned to defendants for committing an offense while under a criminal justice sentence. For defendants sentenced before the amendment, Part A instructs courts: (1) to remove one status point for individuals with seven or more criminal history points and (2) to eliminate status points for those with six or less criminal history points. *See* U.S.S.G. § 4A1.1(e). The result is the retention of status points for only those criminal defendants who have particularly lengthy criminal histories. Specifically, defendants with seven or more criminal history points will receive one status point if they commit an offense while under an existing criminal justice sentence. *Id*. Meanwhile, Part B provides a mechanism for certain zero-point offenders—i.e., criminal defendants with no criminal history points—to obtain a two-level reduction of their offense level. *Id.* § 4C1.1.

Significantly, the United States Sentencing Commission has announced that the changes made by Part A and Part B of Amendment 821 apply retroactively. *Id.* §§ 1B1.10(a) (1),

1B1.10(d). Accordingly, the Court "*may* reduce [a] defendant's term of imprisonment" in accordance with the Amendment. *Id.* § 1B1.10(a)(1) (emphasis added).

## B. Sentence Reductions

The Supreme Court "require[s] district courts to follow a two-step approach" when considering a sentence reduction under an amendment to the Sentencing Guidelines. *Dillon v. United States*, 560 U.S. 817, 827 (2010); *see also* 18 U.S.C. § 3582(c)(2). First, a court must ascertain whether a defendant's sentencing range has "been lowered by the Sentencing Commission," and second, if it has, "the court *may reduce* the term of imprisonment, after considering the factors set forth in section 3553(a) ... if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2) (emphasis added); *Dillon*, 560 U.S. at 827.

## III. DISCUSSION

### A. Defendant is eligible for a sentence reduction under Part A of Amendment 821

The Probation Office has determined that Defendant is ineligible for a sentence reduction under Part B of Amendment 821. Dkt. 52. He does not contest this. Dkt. 57 at 1.

However, under Probation's calculations, the Defendant is eligible under Part A of Amendment 821. Dkt. 52. Excluding status points, the Defendant's criminal history score at sentencing would have been a three. *Id.*[3] Thus, because the Defendant's criminal history score was six or less, the revised guidelines counsel that status points no longer apply to him. U.S.S.G. § 4A1.1(e). Consequently, if the Defendant was sentenced today, with a criminal history score of three, he would only have a criminal history category of II, rather than III. Dkt. 52. With an

---

[3] The Defendant received status points in the original guidelines calculations because he committed the offenses in this case while on probation for prior convictions for abduction with intent to defile, rape, and forcible sodomy. PSR at ¶ 103.

4

offense level of 30, his new guideline range would be 108 to 135 months' imprisonment, rather than 121 to 151 months. *Id*.; U.S.S.G. § 5A. The Government and Defendant agree. Dkts. 57 at 4; 58 at 5.

Because the Defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," the Court considers whether a reduction is appropriate under the sentencing factors in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(2).

**B. The 18 U.S.C. § 3553(a) factors weigh against granting a sentence reduction**

The Defendant's request turns on whether a reduced sentence is supported by the 18 U.S.C. § 3553(a) factors. These factors require the Court to consider, among other things, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). Sentencing ranges and pertinent policy statements issued by the Sentencing Commission are also considered. *Id*.

The circumstances of the underlying Hobbs Act robberies and firearms offenses do not support a sentence reduction. Here, the Defendant robbed each store at gunpoint, endangering the lives of the store clerks and others who may have been present at each location. Additionally, his conduct became increasingly violent. His initial robberies in June 2020 consisted of threats to the clerks, but in August 2020, the Defendant started to physically injure his victims. For instance, when a clerk was unable to open a safe during a robbery on August 14, 2020, the Defendant "pistol whipped [the victim] in the head and stole the cash in the register." Dkt. 37 at 2. The

victim received medical treatment at a nearby hospital. *Id*. During a robbery two weeks later, a gas station clerk reported that he was unable to open a safe. *Id*. at 3. The Defendant then "struck [the victim] in the head with the gun causing [the victim] to fall to the floor." *Id*. And while robbing a different store just days later, the Defendant "walked around the counter and pointed a semiautomatic handgun at [the victim,] then walked closer and struck [the victim] in the head." *Id*. This clerk also required medical treatment. *Id*. During the Defendant's final robbery, on September 17, 2020, he pointed a handgun at a 7-11 clerk and struck the employee in the head before taking cash from the register. *Id*. at 4. When law enforcement arrived, officers found the victim "with blood running down his face." *Id*. An ambulance transported the victim to a hospital, where he received stiches for the laceration to his head. *Id*. Thankfully, the Defendant did not shoot or fatally injure any of the store clerks. Nevertheless, his egregious conduct showed a willingness to inflict violence on his victims.

      The Defendant's criminal history also weighs against a shortened sentence. Although his criminal history is short, it is significant and troubling. In 2015, he was convicted in Charlottesville Circuit Court on charges of abduction with intent to defile, rape, and forcible sodomy. PSR at ¶ 101. The charges arose from a 2013 assault, during which the Defendant attacked his victim outside her home, dragged her to a nearby location, and raped her. *Id*. The Circuit Court sentenced the Defendant to 40 years' imprisonment, with 37 years suspended, for the abduction and sodomy charges. *Id*. The court also imposed a 60-year sentence for the rape charge, but suspended the sentence on the condition that the Defendant be committed to the Virginia Department of Juvenile Justice as a serious offender until his 21st birthday (unless released earlier by the court). *Id*. The Defendant was sentenced to three years of supervised probation after his release from imprisonment. *Id*.

The Defendant's personal history and characteristics provide important context for the instant offenses and his criminal record. In particular, the Defendant emphasizes his age and immaturity at the time of the relevant offenses. Dkt. 62 at 4-6. He was just 15 at the time of the sexual assault, and he committed the instant robberies when he was 22. *Id*. The Court agrees that the Defendant's youth is *a* mitigating factor. *See* U.S.S.G. § 5H1.1. Still, it does not entitle him to a sentence reduction. Even if the Court considers the neurobiological limitations of a young person's brain and attributes a lower degree of culpability to the Defendant, the fact that his initial encounter with the criminal justice system did little to deter future misconduct is concerning. Indeed, after having served a period of incarceration for the sexual assault, he committed a series of *eight* armed robberies. The instant offenses were not just a lapse in judgment. They were part of a three-month crime spree that only ended when law enforcement arrested the Defendant. Thus, the Defendant's age at the time of the offenses does not offset the Court's concern that the Defendant's pattern of violent conduct endangers the community.

The Court must also consider whether a sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a). Considering the Defendant's criminal record and his egregious conduct in the instant case, a sentence reduction would be inconsistent with the severity of his misconduct and fail to provide just punishment. Additionally, the Court may consider the significant benefits that the Defendant received from his plea agreement. *See Hughes v. United States*, 584 U.S. 675, 689 (2018) ("The district court can consider the benefits the defendant gained by entering a Type–C agreement when it decides whether a reduction is appropriate (or when it determines the extent of any reduction), 'for the statute [ § 3582(c)] permits but does not require the court to reduce a sentence.'" (quoting *Freeman v. United States*, 564 U.S. 522, 532 (2011))). Here, the Defendant

received considerable benefits from his Rule 11(c)(1)(C) plea agreement because it may have spared him additional mandatory-minimum sentences. As part of the agreement, the Government agreed to seek dismissal of the remaining counts alleging violations of 18 U.S.C. § 924(c). The Government notes in its brief that if the Defendant was convicted at trial of those offenses, he could have faced an *additional* 336 months of incarceration. Dkt. 58 at 8.[4] The Defendant also benefited from the state prosecutors in Stafford County agreeing not to pursue any additional charges in their jurisdiction. *Id*. In light of these aspects of the plea agreement, the sentence originally imposed constitutes just punishment for the offense. To grant a sentence reduction under these circumstances would neither reflect the seriousness of the underlying criminal offenses nor promote respect for the law. The Defendant's existing sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public.

In sum, the Section 3553(a) factors weigh heavily against a reduction in the Defendant's sentence. Accordingly, the Court declines to exercise its discretion to reduce his sentence to 339 months.

## CONCLUSION

The Defendant's requested sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 of the United States Sentencing Guidelines, Dkt. 62, is **DENIED**. An accompanying Order will follow.

---

[4] The PSR further explains that "[h]ad the defendant proceeded to trial and [been] found guilty of any of Counts 6, 8, 10, 12, and 14, he would have been subject to seven-year mandatory minimum imprisonment sentences on each to run consecutive to all other sentences." PSR at ¶ 131; *see also* 18 U.S.C. § 924(c)(1)(A)(ii) (providing for a seven-year mandatory minimum for brandishing a firearm during and in relation to any crime of violence).

Entered this 30th day of May, 2025.

                                                       NORMAN K. MOON
                                                      SENIOR UNITED STATES DISTRICT JUDGE